**UNITED STATES DISTRICT COURT**

**DISTRICT OF COLORADO**

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

26 MAR 27 PM 4: 56

Civil Action No. _____

BRIAN HENRY LEWIS,

Plaintiff,

v.

7-ELEVEN, INC.,

Defendant.

---

## VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff Brian Henry Lewis ("Plaintiff"), proceeding pro se, alleges as follows:

## I. PARTIES

1. Plaintiff Brian Henry Lewis is an individual residing in Denver, Colorado.

Plaintiff is a Black, multiracial, and multiethnic American male and United States citizen.

As a result of Defendant's conduct described herein, Plaintiff is presently experiencing housing instability and resides in a residential facility.

2. Plaintiff may be contacted at:

Brian Henry Lewis

1901 29th St, Denver, CO 80216

Phone: 720-717-2534

Email: brianking2024a@gmail.com

CC: brianking33a@gmail.com

3. Defendant 7-Eleven, Inc. is a national corporation authorized to do business in Colorado and operating Store No. 3083 at 3083 Brighton Boulevard, Denver, Colorado 80216.

Defendant also owns and operates Rino Liquors, located adjacent to Store No. 3083.

4. Defendant may be served through its registered agent:

7-Eleven Inc.

c/o CT Corporation System

7700 E Arapahoe Road, Suite 220

Centennial, Colorado 80112.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.

1

6. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

7. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Denver, Colorado.

## III. ADMINISTRATIVE EXHAUSTION

8. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or around April 8, 2025.

9. The EEOC issued a Right to Sue letter on December 18, 2025. Plaintiff received the Notice on or about January 3, 2026.

10. This action is filed within ninety (90) days of Plaintiff's receipt of the Notice. Plaintiff has fully exhausted all administrative prerequisites to suit under Title VII and the ADA.

## IV. FACTUAL ALLEGATIONS

### A. Pre-Hire Career Track and Expectations

11. Prior to being hired at Store No. 3083, Plaintiff first interviewed at another 7-Eleven Denver corporate store located on 17th Street. During that interview process, Plaintiff discussed opportunities for advancement with store management, including pathways to area manager, store manager, and franchise ownership. Plaintiff subsequently interviewed with Store Manager Tami Jo Fowler at Store No. 3083, where the same advancement opportunities were discussed. These conversations occurred at both locations prior to Plaintiff accepting his position as a store associate at Store No. 3083. These discussions should be documented in Defendant's corporate records. Plaintiff accepted the position at Store No. 3083 in reliance on these representations regarding advancement opportunities.

12. Plaintiff accepted employment with the reasonable expectation of a safe workplace and a professional environment conducive to advancement.

### B. Plaintiff's Disabilities and Disclosure

13. Plaintiff is an individual with disabilities under the ADA, including PTSD, autism-spectrum-related conditions, and associated anxiety. Plaintiff's autism-spectrum condition affects his communication style and sensory processing. Plaintiff is also neurodivergent and identifies as asexual, which affected how coworkers and supervisors perceived and targeted him.

14. Plaintiff's disabilities constitute physical or mental impairments that substantially limit one or more major life activities within the meaning of 42 U.S.C. § 12102.

15. Throughout his employment beginning in May 2024, Plaintiff repeatedly disclosed his disabilities to Store Manager Tami Jo Fowler, including on the day of his termination on August 12, 2024, and requested reasonable accommodations including predictable communication, a non-threatening environment, and basic workplace safety.

16. Defendant had actual or constructive knowledge of Plaintiff's disabilities and related limitations.

### C. Early Incidents and Management Response

17. Plaintiff began working at Store No. 3083 in May 2024 and performed his duties diligently.

18. On or about May 28, 2024, coworker Dakota Lulei appeared intoxicated, entered restricted areas, behaved aggressively, and threatened Plaintiff's job security.

19. Plaintiff reported the incident to Store Manager Tami Jo Fowler. Defendant failed to address Dakota Lulei's misconduct and instead targeted Plaintiff for discipline.

### D. Harassment, Threats, and Hostile Work Environment

20. Plaintiff, a Black, multiracial, and multiethnic male, was subjected to repeated harassment based on race, sex, disability, and neurodivergence.

21. On or about June 8, 2024, coworker Xavier Nunn threatened to punch Plaintiff, stating words to the effect of "if you don't get away from me I'm going to punch you in your motherfucking face." Nunn used a racial slur directed at Plaintiff and made sexually explicit gestures on camera. Nunn also specifically targeted Plaintiff by misgendering him, exploiting Plaintiff's autism-spectrum condition, PTSD, and asexuality as bases for harassment.

22. Plaintiff reported these incidents to Store Manager Tami Jo Fowler, District Manager Scott Hopps, and other supervisors.

23. Plaintiff also contacted Defendant's human resources department in an attempt to obtain his employment details, at which time Plaintiff discovered he had not been correctly entered into Defendant's employment database. HR staff member Sandy yelled at Plaintiff over the phone during this inquiry, providing no assistance or resolution. Despite Plaintiff subsequently raising the database error with Store Manager Tami Jo Fowler, Defendant never corrected the error or provided Plaintiff with the required employment information. Sandy's hostile response caused Plaintiff additional trauma and emotional distress, and the unresolved database error further interfered with Plaintiff's employment records and his ability to obtain accurate employment verification.

24. HR's hostile response discouraged Plaintiff from further reporting to HR at that time, violated Defendant's internal policies, and exacerbated Plaintiff's PTSD symptoms.

25. Defendant failed to take effective corrective action at any level of management or human resources. Defendant conducted no written investigation, interviewed no witnesses, reviewed no security footage, and issued no corrective action in response to Plaintiff's complaints.

26. On or about July 4, 2024, security guard Johnny, working in connection with the store, threatened Plaintiff's life, stating directly: "I'll kill your stupid ass." Defendant exercised control and direction over security personnel including Johnny.

27. Plaintiff reasonably feared for his safety.

28. Defendant failed to investigate or discipline those responsible.

29. Beginning in or around May 2024, Defendant required Plaintiff to work overnight graveyard shifts alone for approximately two months without proper breaks, despite Plaintiff's known disabilities.

30. Defendant's staffing decisions created unsafe working conditions, increased Plaintiff's exposure to threats and harassment, and exacerbated Plaintiff's PTSD and anxiety.

31. Plaintiff's service dog is a medically necessary component of his disability accommodation under the ADA. On or about June 22, 2024, while Plaintiff was present at the store as a customer, a store associate became physically aggressive toward Plaintiff. The associate mocked Plaintiff's PTSD and disabilities in a threatening and demeaning manner. As a direct result of the associate's aggressive and hostile conduct, Plaintiff's service dog became frightened and fled the store. Defendant's failure to ensure a safe environment for Plaintiff and his service animal, and its affirmative allowance of conduct that interfered with and disrupted the service animal's function, constituted interference with Plaintiff's ADA accommodations.

32. On or about July 31, 2024, coworker Deashawn verbally abused Plaintiff, directing racial slurs and other profanity. Store Manager Tami Jo Fowler was notified and responded by yelling at Plaintiff and conducting the discussion in front of other employees, further humiliating Plaintiff rather than addressing the perpetrator's conduct.

33. The cumulative conduct described herein created a severe and pervasive hostile work environment.

**E. Retaliation and Pretextual Discipline**

34. After Plaintiff reported harassment and threats, Defendant issued false or pretextual write-ups.

35. On multiple occasions, these write-ups were visibly pre-prepared before any alleged incident occurred, including a pre-written write-up presented on June 24, 2024, and a pre-written Final Warning issued on July 3, 2024.

36. In August 2024, Defendant continued issuing retaliatory write-ups. On or about August 1, 2024, Plaintiff was written up for a cash-handling matter on a day he was sick and had disclosed his PTSD and nightmares to management. On or about August 9, 2024, Plaintiff was written up for a no-call/no-show after notifying Store Manager Fowler by text that he was too ill to report. These write-ups were pretextual and designed to build a paper trail to justify termination.

37. Plaintiff possesses audio recordings documenting that District Manager Scott Hopps had direct knowledge of Plaintiff's complaints, disability disclosures, and reports of harassment prior to and during the termination meeting on August 12, 2024, as well as audio of the termination meeting itself.

38. In the recorded conversation, Hopps and Fowler jointly addressed Plaintiff's prior complaints, demonstrating that Hopps had actual notice of the threats, racial harassment, disability-related issues, and safety concerns raised by Plaintiff.

39. The presence and participation of District Manager Hopps in the termination meeting confirms that he was aware of Plaintiff's protected complaints at the time he approved and executed the termination.

40. These write-ups did not reflect Plaintiff's actual conduct and were created to justify termination.

**F. Termination**

41. On or about August 12, 2024, Plaintiff was called into a meeting with District Manager Scott Hopps and Store Manager Tami Jo Fowler.

42. Immediately prior to the termination meeting, Plaintiff was subjected to a pretext incident orchestrated by another store employee designed to provide false grounds for termination.

43. Plaintiff was presented with a pre-typed termination notice containing false allegations, including a false claim that Plaintiff had directed a profane insult at a coworker. Plaintiff categorically denies this allegation, and audio recordings from the evening before the termination document that no such incident occurred as described.

44. The termination notice was prepared before the meeting began. Defendant conducted no investigation, interviewed no witnesses, and reviewed no evidence prior to issuing the termination.

45. The pre-drafted nature of the termination documents is evidence of retaliatory intent and pretext.

46. Plaintiff's termination occurred shortly after his protected complaints, including disability disclosures made on the day of termination.

47. Defendant's stated reasons for termination were pretextual.

48. Prior to termination, Store Manager Fowler refused to complete an employment verification form requested by Plaintiff, falsely claiming it was against corporate policy.

**G. Post-Termination Retaliation and False Police Reporting**

49. After termination, Plaintiff continued to experience retaliatory conduct from individuals associated with Defendant.

50. On or about September 14, 2024, Josh, an employee of Rino Liquors, told Plaintiff to "get the fuck out the store" using profanity and stated, "if you have a problem we can squash it" — a direct implied threat of physical violence — placing Plaintiff in reasonable fear of imminent harm.

51. On or about October 5, 2024, Plaintiff was told he was banned from Store No. 3083 by a store employee named Chris. Assistant Manager Kathy Lee supported the banning. Store Manager Fowler,

4

speaking on speakerphone, made false statements supporting the ban. Security guard Mike Nielsen then called law enforcement.

52. Managers and employees at Store No. 3083 informed police officers that Plaintiff was "not allowed" on the premises and attempted to initiate a trespass warning.

53. These statements were false and lacked any lawful basis.

54. District Manager Hopps' direct involvement in the termination meeting demonstrates that upper management had actual knowledge of the threats, harassment, and safety violations reported by Plaintiff and nevertheless failed to take corrective action.

55. Defendant's abuse of law enforcement caused Plaintiff emotional distress, fear, reputational harm, and further destabilization.

## H. Ongoing Harm

56. As a direct result of Defendant's conduct, Plaintiff suffered severe emotional distress, including exacerbation of PTSD and anxiety.

57. Plaintiff experiences recurring nightmares related to the threats, harassment, and termination events.

58. Plaintiff suffers sleep disruption, trauma-related nightmares, hypervigilance, and panic symptoms that began during his employment and worsened after termination.

59. Plaintiff has been unable to return to work, including his prior high-tech career field.

60. Plaintiff has lost wages, lost future earning capacity, and lost opportunities for advancement.

61. Defendant's refusal to complete Plaintiff's employment verification form materially interfered with Plaintiff's ability to secure new employment.

62. Plaintiff's termination contributed to his current homelessness and housing instability.

63. Plaintiff continues to experience financial hardship and medical deterioration.

## V. CLAIMS FOR RELIEF

### COUNT I — Title VII: Hostile Work Environment (Race and Sex)

64. Plaintiff incorporates paragraphs 1–63 as though fully set forth herein.

65. Plaintiff was subjected to unwelcome conduct based on race and sex, including racial slurs, sexually explicit gestures, misgendering, and threats.

66. The conduct was severe or pervasive and altered the conditions of Plaintiff's employment.

67. Defendant knew or should have known of the harassment and failed to take appropriate corrective action.

68. As a direct and proximate result, Plaintiff suffered damages, including emotional distress, humiliation, and loss of employment opportunities.

### COUNT II — Title VII: Retaliation

69. Plaintiff incorporates paragraphs 1–68.

70. Plaintiff engaged in protected activity by reporting harassment and discriminatory conduct.

71. Defendant retaliated against Plaintiff by issuing false write-ups, refusing employment verification, creating a hostile environment, and terminating Plaintiff.

72. Defendant's retaliatory actions were materially adverse and would dissuade a reasonable employee from engaging in protected activity.

73. Plaintiff suffered damages as a result.

## COUNT III — ADA: Disability Discrimination

74. Plaintiff incorporates paragraphs 1–73.

75. Plaintiff is an individual with disabilities within the meaning of the ADA.

76. Plaintiff was qualified to perform the essential functions of his position with or without reasonable accommodation.

77. Defendant subjected Plaintiff to adverse treatment and termination because of his disabilities.

78. Plaintiff suffered damages as a result.

## COUNT IV — ADA: Failure to Accommodate

79. Plaintiff incorporates paragraphs 1–78.

80. Plaintiff requested reasonable accommodations related to his disabilities.

81. Defendant failed to engage in the interactive process or provide reasonable accommodations, including by requiring Plaintiff to work overnight shifts alone for months, failing to protect Plaintiff's service animal, and ignoring repeated disability disclosures.

82. Defendant's failure to accommodate Plaintiff's disabilities violated the ADA.

83. Plaintiff suffered damages as a result.

## COUNT V — ADA: Retaliation / Hostile Work Environment

84. Plaintiff incorporates paragraphs 1–83.

85. Plaintiff engaged in protected activity under the ADA by disclosing his disabilities and requesting accommodations.

86. Defendant retaliated against Plaintiff by subjecting him to hostile treatment, false write-ups, interference with his service animal's function, and termination.

87. Defendant's conduct created a hostile work environment based on disability and protected activity.

88. Plaintiff suffered damages as a result.

## COUNT VI — Wrongful Termination in Violation of Public Policy (Colorado)

89. Plaintiff incorporates paragraphs 1–88 as though fully set forth herein.

90. Colorado public policy prohibits terminating an employee for reporting unlawful conduct, unsafe working conditions, or discrimination.

91. Plaintiff reported harassment, threats, discriminatory conduct, and workplace safety issues.

92. Defendant terminated Plaintiff in retaliation for engaging in protected conduct.

93. Defendant's actions violate Colorado public policy.

94. Plaintiff suffered damages as a result.

## COUNT VII — Negligent Hiring, Retention, and Supervision (Colorado)

95. Plaintiff incorporates paragraphs 1–94.

96. Defendant owed Plaintiff a duty to exercise reasonable care in hiring, retaining, and supervising employees and security personnel.

97. Defendant knew or should have known that certain employees and agents, including Xavier Nunn, security guard Johnny, and others, posed a risk of harm to others.

98. Defendant exercised sufficient control over security personnel, including Johnny, to establish an agency relationship giving rise to direct liability.

99. Defendant failed to take reasonable steps to prevent foreseeable harm and failed to adequately train managers and supervisors in ADA compliance, Title VII obligations, and workplace safety.

100. District Manager Scott Hopps' direct participation in the termination meeting demonstrates that upper management had actual knowledge of the threats, harassment, and safety violations reported by Plaintiff and nevertheless failed to take corrective action.

101. Defendant's negligence caused Plaintiff emotional distress, fear, and economic loss.

102. This claim is brought pursuant to Colorado common law and supported by C.R.S. § 13-21-111.

### COUNT VIII — Assault (Colorado)

103. Plaintiff incorporates paragraphs 1–102.

104. Defendant's agents, including security guard Johnny, who stated "I'll kill your stupid ass," liquor store employee Josh, who threatened "if you have a problem we can squash it," and the coworker Xavier Nunn, whose threatening and hostile conduct toward Plaintiff caused Plaintiff's service dog to flee the store, intentionally placed Plaintiff in reasonable fear of imminent physical harm.

105. Plaintiff experienced fear, emotional distress, and ongoing psychological harm as a result.

106. This claim is brought pursuant to Colorado common law and C.R.S. § 13-21-106.

### COUNT IX — Intentional Infliction of Emotional Distress (Colorado)

107. Plaintiff incorporates paragraphs 1–106.

108. Defendant's conduct, including death threats, racial slurs, misgendering, service animal disruption, HR hostility, retaliatory termination, and abuse of law enforcement, was extreme and outrageous.

109. Defendant acted intentionally or with reckless disregard for the likelihood of causing Plaintiff severe emotional distress.

110. Plaintiff suffered severe emotional distress, including exacerbation of PTSD, anxiety, nightmares, sleep disruption, and loss of stability.

### COUNT X — Defamation (Colorado)

111. Plaintiff incorporates paragraphs 1–110.

112. Defendant's employees made false statements to police and others implying that Plaintiff was trespassing, dangerous, or otherwise engaged in misconduct.

113. These statements were published to third parties without privilege.

114. The statements were false and made with malice or reckless disregard for the truth.

115. Plaintiff suffered reputational harm, emotional distress, and other damages.

116. This claim is brought pursuant to Colorado common law.

### COUNT XI — Abuse of Process / False Reporting (Colorado)

117. Plaintiff incorporates paragraphs 1–116 as though fully set forth herein.

118. On or about September 14, 2024 and October 5, 2024, Defendant's employees and agents knowingly provided false information to law enforcement, including statements that Plaintiff was "not allowed" on the premises and should be trespassed.

119. These false statements were made by identified agents of Defendant including Store Manager Tami Jo Fowler and Assistant Manager Kathy Lee.

120. These statements were made without probable cause and with the improper purpose of retaliating against Plaintiff for reporting discrimination, harassment, and workplace safety issues.

121. Defendant's conduct caused law enforcement to initiate or attempt to initiate adverse action against Plaintiff.

122. Defendant's actions constitute abuse of process and false reporting under Colorado law.

123. Plaintiff suffered emotional distress, reputational harm, fear, and further destabilization as a direct result.

124. This claim is supported by the public policy embodied in C.R.S. § 18-8-111 (false reporting to authorities).

### COUNT XII — Race Discrimination and Retaliation (42 U.S.C. § 1981)

125. Plaintiff incorporates paragraphs 1–124 as though fully set forth herein.

126. 42 U.S.C. § 1981 guarantees all persons the same right to make and enforce contracts as enjoyed by white citizens, including the right to the benefits, privileges, terms, and conditions of employment.

127. Plaintiff is a Black, multiracial, and multiethnic male, a member of a protected class, and engaged in protected activity by reporting race-based harassment and discriminatory conduct, including the use of racial slurs by coworkers.

128. Defendant intentionally discriminated and retaliated against Plaintiff on the basis of race by permitting a hostile work environment, failing to address racial slurs, issuing pretextual discipline, terminating Plaintiff, and engaging in post-employment retaliation.

129. Defendant's conduct was willful, malicious, and carried out with reckless disregard for Plaintiff's federally protected rights.

130. As a direct and proximate result, Plaintiff suffered economic losses, emotional distress, reputational harm, and other damages.

131. Plaintiff is entitled to compensatory and punitive damages under 42 U.S.C. § 1981.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and award the following relief:

A. Back Pay.

B. Front Pay.

C. Compensatory Damages.

D. Hedonic Damages pursuant to C.R.S. § 13-21-102.5.

E. Medical and Special Damages.

F. Liquidated Damages.

G. Punitive Damages pursuant to federal law and C.R.S. § 13-21-102.

H. Restoration or Compensation for Lost Employment Benefits.

I. Vocational Rehabilitation Damages.

J. Tax Offset.

K. Injunctive Relief, including retraction of false police statements and sealing of records under C.R.S. § 24-72-705.

L. Litigation Costs.

M. Attorney's Fees.

N. Pre- and Post-Judgment Interest.

O. Any other relief the Court deems just and proper.

## VII. JURY DEMAND

132. Plaintiff demands a trial by jury on all issues so triable.

## VIII. VERIFICATION

I, Brian Henry Lewis, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on March 27, 2026

Denver, Colorado.

Brian Henry Lewis

Plaintiff, Pro Se

9

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Denver Field Office**
950 17th St, Suite 300
Denver, CO 80202
(720) 779-3610
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/18/2025

**To:** Mr. Brian H. Lewis
General Delivery 951 20th st
DENVER, CO 80202
Charge No: 541-2025-03414

EEOC Representative and email:    CARLOS PALAFOX
INVESTIGATOR
CARLOS.PALAFOX@EEOC.GOV

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 541-2025-03414.

On behalf of the Commission,

Digitally Signed By:Sheryl Hayashi
12/18/2025

Sheryl Hayashi
Director

**Cc:**
Lisa Bohler
500 Speedway Drive
Enon, OH 45323

7-ELEVEN, INC.
3083 Brighton Blvd
DENVER, CO 80216

Please retain this Notice for your records.